```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

CHADWICK J. ST. LOUIS,          :
    Plaintiff,              :
                            :
    v.                      :    Case No. 3:18cv1590(AWT)
                            :
McCLAIN, ET AL.                 :
    Defendants.             :

## ORDER DISMISSING AMENDED COMPLAINT

On September 24, 2018, the plaintiff, Chadwick J. St. Louis, an inmate currently housed at the Garner Correctional Institution ("Garner") in Newtown, Connecticut, filed a complaint pro se pursuant to 42 U.S.C. § 1983 against eight Connecticut Department of Correction ("DOC") and Correctional Managed Health Care officials for violating his constitutional rights. See Compl. [Doc.#1]. The court dismissed his complaint with leave to amend because it improperly joined four unrelated causes of action, in violation of Federal Rule of Civil Procedure 20. But the court gave the plaintiff an opportunity to amend his complaint stating one of those four causes of action. See Initial Review Order [Doc.#8]. On November 14, 2018, the plaintiff filed an amended complaint. Am. Compl. [Doc.#9]. However, as discussed below, the amended complaint fails to state a plausible claim for relief.

I.   **Legal Standard**

Pursuant to 28 U.S.C. § 1915A, this court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of America, 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. Factual Allegations

On February 15, 2018, Correctional Officer McLain issued the plaintiff a disciplinary report ("DR") for conspiring to convey contraband into MacDougall-Walker Correctional Institution ("MWCI"), a Class-A offense, in violation of DOC Administrative Directive 9.5.[1] Am. Compl. ¶ 1; Pl.'s Ex. A [Doc.#9 at 11]. The DR had the wrong date, time, and location of the alleged violation and lacked sufficient evidentiary support. Am. Compl. ¶¶ 6, 8. Moreover, conspiring to convey contraband into a DOC facility is not listed as an offense under Administrative Directive 9.5. Id. at ¶ 8.

Lieutenant Roy "reviewed and signed off" on the DR, but he "was not impartial" in evaluating the DR because he is the "intelligence/security lieutenant" to whom McLain directly reports. Am. Compl. ¶¶ 1, 7. It was Roy's duty to ensure that the DR was supported by sufficient evidence. Id. at 7.

The plaintiff was placed in segregation shortly after McLain issued the DR. Am. Compl. ¶ 1. He pleaded not

---

[1] DOC Administrative Directive 9.5(12)(F) prohibits the "[m]aking, transferring or possessing" of any contraband in a DOC facility. Contraband is defined as "[a]nything not authorized to be in an inmate's possession, used in an unauthorized or prohibited manner or altered in any way." DOC Administrative Directive 9.5(3)(G).

3

guilty to the charge but was told that he would remain in segregation until after his DR hearing. Am. Compl. ¶ 2.

On March 15, 2018, the plaintiff met with Disciplinary Hearing Officer Prior. Am. Compl. ¶ 2. The plaintiff gave Prior a copy of his written defense to the DR. Id.; Pl.'s Ex. B [Doc.#9 at 12]. He was subsequently found guilty of the DR and received as sanctions fifteen days of punitive segregation, thirty days loss of visitation, and thirty days loss of mail privileges. Am. Compl. ¶ 2. On March 19, 2018, he was transferred from MWCI to Garner. Id.

The plaintiff appealed the DR finding to District Administrator Angel Quiros, contending that Prior's finding of guilt violated due process. Am. Compl. ¶¶ 3, 9; Pl.'s Ex. C [Doc.#19 at 13]. He attached to his appeal the written defense that he had previously given to Prior. Am. Comp. ¶ 3. Quiros denied the plaintiff's appeal, concluding that Prior's finding of guilt was reasonable based on the evidence presented at the DR hearing, including video surveillance footage, and that no due process violation occurred. Id. at ¶¶ 3, 10; Pl.'s Ex. D [Doc.#9 at 14].

While at Garner, the plaintiff was informed that, in addition to the sanctions he received at MWCI, his contact visits were suspended for two years because he had been

4

found guilty of a Class-A offense. Am. Compl. ¶ 4. The plaintiff filed an administrative appeal with respect to this decision, but the appeal was denied. Id.; Pl.'s Ex. E [Doc.#9 at 15].

As a result of the DR finding, the plaintiff spent a total of thirty-three days in segregation. Am. Compl. at 17. While in segregation, he was denied his personal property, including his television, radio, clocks, clothes, mail, and commissary items, church services, phone privileges, recreation, and contact visits. Id. Due to his diagnosed post-traumatic stress disorder ("PTSD") and hypertension, the plaintiff suffered severe emotional distress, "extreme anxiety," and "a great loss of quality of life." Id.

## III. Analysis

The plaintiff claims that the defendants, McLain, Roy, Prior, and Quiros, violated his Fourteenth Amendment rights to due process and equal protection of the laws and his Eighth Amendment protection against cruel and unusual punishment by placing him in segregation and denying him various privileges based on an unsubstantiated DR. Am. Compl. at 17. He seeks monetary, injunctive, and declaratory relief. Id. at 18. However, the plaintiff has failed to state a claim upon which relief could be granted.

5

**A. Fourteenth Amendment Due Process**

The plaintiff claims that the defendants violated his Fourteenth Amendment right to procedural due process by subjecting him to disciplinary action for a baseless charge. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (per curiam).

In the prison context (i.e. involving someone whose liberty interests have already been severely restricted because of his confinement in a prison), a prisoner must show that he was subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of thirty days of confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. See id. at 486. In Davis v. Barrett, 576 F.3d 129 (2d Cir. 2009), the court stated:

6

> "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Id. (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir.1998)). This Court noted in Colon v. Howard, 215 F.3d 227 (2d Cir. 2000), that restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual. Id. at 231-32 & n. 5. We have also stated that SHU confinements of fewer than 101 days "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical."

Davis, 576 F.3d at 133 (quoting Palmer v. Richards, 364 F.3d 60, 65 (2d Cir. 2004)). Thus, courts analyzing prisoner due process claims must examine the actual punishment received, as well as the conditions and duration of the punishment. See Palmer, 364 F.3d at 64.

As to the second step of the analysis, the procedural safeguards to which the plaintiff is entitled before being deprived of a constitutionally significant liberty interest are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written

7

statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. See Wolff v. McDonnell, 418 U.S. 539, 564-69 (1974); Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).

In this case, the plaintiff alleges that, as a result of the DR finding, he was placed in segregation for thirty-three days, far less than what the Second Circuit generally considers to be an "atypical and significant hardship" based on just the length of segregated confinement. In addition to the length of segregated confinement, the plaintiff alleges that he was denied his personal property, mail, church services, contact visits, phone privileges, commissary privileges, and recreation. These deprivations are insufficient to establish an "atypical and significant hardship." See Chavis v. Chappius, No. 06-CV-543S (WMS), 2015 WL 1472117, at *14 (W.D.N.Y. Mar. 31, 2015) (deprivation of exercise and religious services does not create "atypical and significant hardship"); Holland v. Goord, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. Jul. 13, 2006) (seventy-seven days in segregation during which prisoner was deprived of television, phone, packages, commissary, and religious services did not create protected liberty interest). Therefore, the plaintiff has not

8

alleged sufficient facts showing that he was entitled to due process protection.

Even if the plaintiff's placement in segregation and loss of privileges amounted to an "atypical and significant hardship," he has not alleged any facts showing that the defendants deprived him of any specific procedural safeguards during the disposition of his DR charge.  He does not allege that they deprived him of adequate notice of the charge, the opportunity to present a defense, the right to representation, or a written explanation of the decision.  His claims that the DR contained inaccurate information and no evidentiary support and that Lieutenant Roy did not make an impartial decision on the DR are conclusory and devoid of any supporting facts.  Based on the foregoing, the plaintiff's Fourteenth Amendment due process claim is dismissed for failure to state a claim upon which relief could be granted.

### B. Fourteenth Amendment Equal Protection

The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr.,

473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). The plaintiff may state an equal protection violation under the "class of one" theory. To state a valid class-of-one claim, he must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The plaintiff claims that the defendants' handling of the DR violated his Fourteenth Amendment right to equal protection of the laws. He has not, however, alleged any facts showing that the defendants treated him differently than any other inmate. Thus, there are no facts alleged to support an equal protection claim under the Fourteenth Amendment and that claim is being dismissed for failure to state a claim upon which relief could be granted.

## C. Eighth Amendment Conditions of Confinement

Finally, the plaintiff claims that the thirty-three days he spent in segregation without personal property, mail, phone privileges, church services, commissary, contact visits, and recreation amounted to cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment's prohibition on cruel and unusual punishment includes a prohibition on inhumane conditions of confinement. Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 828 (1994)). The standard for an inhumane conditions claim contains both an objective and a subjective component: objectively, "the prison officials' transgression" must be "'sufficiently serious'"' and subjectively, "the officials [must have] acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e. with 'deliberate indifference to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 834). "Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'" Alster v. Goord, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Thus, prison officials cannot "deprive inmates of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" Id. (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)). Prison officials cannot expose prisoners to conditions that may pose an unreasonable risk of serious damage to the prisoners' future health. Id. (citing Phelps, 308 F.3d at 185).

The alleged deprivations in this case (loss of phone, personal property, mail, contact visits, religious services, commissary, and recreation) do not amount to cruel and unusual punishment under these standards. See Marrero v. Weir, No. 3:13-CV-0028 (RNC), 2014 WL 4799228, at *3 (D. Conn. Sept. 26, 2014) (loss of phone and visitation privileges do not amount to sufficiently serious deprivation under Eighth Amendment). The plaintiff has not alleged facts showing that he was deprived of any life necessities or subjected to any harsh conditions while in segregation. His allegation that the confinement caused him severe emotional distress and anxiety is insufficient to support the Eighth Amendment claim because there are no facts suggesting that any of the defendants were even aware of his condition, let alone that they acted with deliberate indifference to his health or safety. Therefore, the Eighth Amendment claim is also being dismissed for failure to state a claim upon which relief could be granted.

**IV. Conclusion**

The plaintiff's amended complaint [Doc.#9] fails to state a claim upon which relief could be granted. Therefore, this case is hereby DISMISSED under 28 U.S.C. § 1915A. The Clerk is directed to enter judgment in favor of the defendants and close this case.

It is so ordered.

Signed this 5th day of December 2018 at Hartford, Connecticut.

```
            /s/AWT
      Alvin W. Thompson
   United States District Judge
```